IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAREEM GLASS,
        Plaintiff
    v.
GERALD ROZUM, WARDEN, S.C.I.
SOMERSET, et al.,
        Defendants

Case No. 3:14-cv-61-KRG-KAP

Report and Recommendation

Recommendation

Pending are the motions to dismiss of defendant Mahmud, docket no. 31, and the Pennsylvania Department of Corrections defendants Ellers, Puskar, and Thomas, docket no. 19. (I already recommended that defendant Rozum be dismissed, see docket no. 4, and service was never made on defendant Kaufman, for whom plaintiff's instructions for service were inadequate because Kaufman was no longer employed at S.C.I. Somerset, see docket no. 9.) Plaintiff Glass has responded to both motions. I recommend that the motions be granted and the complaint dismissed.

Report

Glass's complaint, docket no. 2, alleges that he suffered from an itchy skin condition that he reported to medical personnel at S.C.I. Somerset at least by 2010. Medical personnel there (including a non-defendant Dr. Carammana) and at least one outside dermatologist (a non-defendant Dr. King) treated Glass between 2010 and 2011 with triamcinolone acetonide, a topical corticosteroid cream. While Glass was at S.C.I. Graterford in June 2011, a Dr. Marsh employed there diagnosed Glass with a cyst, and

stopped the prescription of triamcinolone acetonide, allegedly telling Glass that it had permanently damaged his skin. In November 2011 defendant Kaufman stated that he would order a lotion that an unnamed dermatologist (perhaps Dr. King) had prescribed to help Glass's skin. In February 2012, someone determined that he had allergies to soy, onions, and shrimp. Glass complained in July 2012 that either the cereal or breakfast cakes served at Somerset had soy in them. Defendant Thomas replied that possibly the pastries contained soy but not the cereal. In August 2012 defendant Thomas sent back a reply to one of Glass's requests stating that soy was not listed as an allergen for Glass; Thomas corrected this later in August 2012. Glass complained again in a inmate request sent to defendant Rozum in December 2012 that he was being fed foods cooked with soybean oil, which he claimed to be allergic to. The response from nondefendant Gehlmann dated the following day was that the Pennsylvania Department of Corrections' dietician had already put a special diet in place for Glass. Glass filed his complaint in April 2014.

Taking Glass's *pro se* status into account and giving him the benefit of all reasonable inferences, Glass attempts to allege three claims: 1) that defendants or some of them were deliberately indifferent to the skin condition; 2) that defendants or some of them have "covered up" their failure to correctly diagnose the skin condition as a food allergy and failed to repair the alleged skin

damage that resulted from the prescribed medication; and 3) that on one occasion in August 2012 defendant Thomas incorrectly told Glass that soy was not on his allergy list and did nothing to ensure that allergens were not in his diet.

The defendants assert the applicable statute of limitations (two years from the date the cause of action accrues, see Smith v. Holtz, 87 F.3d 108, 111n.2 (3d Cir.1996)) as a defense. If Glass had had an immediately recognizable trauma caused by a single act of a defendant, the cause of action would have accrued when the defendant acted because Glass would have been aware he was injured and that a defendant's conduct caused the injury. In the case of an injury that is not immediately obvious or which results after a period of time from actions or inactions of a defendant whose identity may not be obvious, the discovery rule means that the cause of action accrues when Glass was aware or reasonably should have been aware that he is injured and that another person's conduct caused the injury. See Cole v. Ferranti, 532 Fed.Appx. 205, 206 (3d Cir.2013). While the latter case can be more complicated because the delay in the manifestation of injury may make the role or even the identity of the persons at fault less obvious, a cause of action still accrues when a plaintiff believes or should know that someone caused him injury. It is not necessary that plaintiff knows precisely who caused the injury or precisely how a defendant caused the injury: upon

discovering an injury a plaintiff has a duty to investigate the injury and its cause within the limitations period or forego a remedy. Vitalo v. Cabot Corp., 399 F.3d 536 (3d Cir.2005). Vitalo sued his former employer in 2001 for exposing him to beryllium dust beginning in 1959, and relied on the discovery rule since he was not diagnosed with chronic beryllium disease until 2001. The Court of Appeals affirmed the dismissal of the complaint as untimely since Vitalo had indisputably received information in 1998 and in early 1999 informing him that his health problems "could be" related to beryllium exposure and recommending further testing. 399 F.3d at 544. See also Kichline v. Conrail, 800 F.2d 356, 358 (3d Cir.1986). Kichline, a former Conrail employee, alleged his lung ailments were caused by workplace exposure to heavy concentrations of diesel fumes. Kichline filed suit in August 1983, nine months after his last day at work, seeking to recover for injuries allegedly caused by fumes since at least 1975. The Court of Appeals held that Kichline could recover for any aggravation to his lung ailments caused by exposure to diesel fumes within three years (the applicable limitations period in that case) of filing his complaint, but not for injuries caused by earlier exposures because Kichline had been aware since 1978 or 1979 that his exposure was causing him harm. 880 F.2d at 361.

The continuing violations theory applies when a defendant's injurious conduct is a continuing practice. See

4

Spencer v. Courtier, 552 Fed.Appx. 121, 123 (3d Cir.2014). Spencer sued various prison officials in May 2009 on the grounds that they had aggravated his mental health problems by confining him in a special management unit in January 2006. The lower court had granted summary judgment due to qualified immunity. Even though Spencer remained in the SMU at least through March 2008, see 552 F.3d at 124, the Court of Appeals held that the claim was simply untimely:

> Spencer knew of the alleged exacerbation of his mental health problems as early as May 2006 when he filed a similar civil rights complaint against many of the same defendants challenging his placement and treatment in the SMU, see Spencer v. Maxwell, M.D. Pa. Civ. No. 06-cv1099, and in October 2006 when he grieved the issue.

552 Fed.Appx. at 123. The court rejected a continuing violations theory because the defendants' act of placing Spencer in the SMU itself should have triggered his awareness of and duty to assert his rights: simply having continuing ill effects from an original wrongful act does not serve as the basis for alleging a continuing violation. Accord, Cibula v. Fox, 570 Fed.Appx. 129 (3d Cir.2014)(wrongful act was labeling Fox a sex offender without due process; failure to correct that alleged error did not constitute a continuing violation); Cole v. Ferranti, supra (inmate allegedly defamed by publication filed untimely complaint; second printing of the defamatory publication did not give rise to new limitations period).

5

Glass began complaining about his skin condition to the Pennsylvania Department of Corrections no later than January 2010. He filed a grievance (the various appeals and responses are at docket no. 28, Exhibit A, but the original grievance is not included) in November 2011. He clearly believed that he had an injury that was the fault of someone in the Pennsylvania Department of Corrections more than two years before he filed his complaint in April 2014. Glass cannot rely on a claim that there was a continuing violation because that doctrine does not apply when a plaintiff is aware of his injury at the time it occurred. Montanez v. Secretary Pennsylvania Department of Corrections, ___ F.3d ___ slip op. at *5 (3d Cir.August 15, 2014). Glass's argument in his responses to the motions to dismiss that the filing of a grievance equitably tolls the statute of limitations until the final administrative appeal was decided has been rejected. Glass offers no allegation that the administrative appeals took an excessive amount of time to decide or were delayed to cause the running of the statute of limitations. See Pearson v. Beard, Case No. 3:09-cv-54-KRG-KAP (W.D.Pa. January 8, 2013), appeal pending No. 13-1412 (3d Cir.); see also Montanez v. Secretary Pennsylvania Department of Corrections, ___ F.3d ___ (3d Cir.August 15, 2014). Unless the Court of Appeals invents a tolling doctrine for prison civil rights cases in Pearson (argument is scheduled for November) his deliberate indifference claim is untimely because Glass was

claiming for four years before filing his complaint (and more than two years before filing his his grievance) that the defendants were mistreating his skin condition.

As for the cover-up and failure to repair skin damage claims, they are quite narrow. Glass claims that the Pennsylvania Department of Corrections is "covering up" their alleged mistreatment of him by refusing to help Glass document his claims, for instance by taking pictures of Glass's skin condition (the pictures are attached as exhibits to the complaint, so there obviously were pictures taken at some point) or by giving him contact information for Dr. King. Defendants have no legal duty to help an inmate create or preserve evidence, even evidence of alleged wrongdoing, nor do they have a duty to allow an inmate to contact former medical providers.

Glass does not further explain what he means by defendants' alleged failure to repair his skin damage. But that alleged failure, like Glass's 2012 claim that he was being exposed to soy allergens does not allege the violation of any federal civil right. The exhibits Glass attaches to his complaint indicate that the medical staff at Somerset and their superiors do not believe that Glass has any skin damage as a result of the use of triamcinolone acetonide. They also indicate that Thomas, Gehlmann, and presumably the dietician at the Pennsylvania Department of Corrections responsible for Glass's diet, obviously believe that

they have prescribed a no soy allergen diet for Glass. Glass may just as firmly believe that his skin was damaged by triamcinolone acetonide in 2010 and 2011 and that in 2012 he was exposed to allergens, but even if Glass is correct the defendants are not liable. The Supreme Court has stated that for prison officials to be liable they must be deliberately indifferent to an inmate's serious medical needs, and deliberate indifference requires allegations that a prison official:

> knows of and disregards an excessive risk to inmate health or safety; the official must **both** be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, **and** he must **also** draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994)(my emphasis). Taken together, the complaint, the exhibits, and the briefs Glass has filed in opposition permit only an inference that Glass believes Glass. There are nowhere in the record any allegations of fact that would support an inference that any defendant believes Glass suffered skin damage (at all), or is being fed a diet to which he is allergic (and despite that belief disregards Glass's dietary needs). There is a wide margin between failure to respond to an inmate's every request for medical care and being deliberately indifferent to an inmate's serious medical needs. Glass does not allege facts indicating that this matter is even in the grey area justifying the expenditure of resources on discovery. The motions to dismiss should be granted.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 29 October 2014

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Kareem Glass HU-2290
S.C.I. Somerset
1600 Walters Mill Road
Somerset, PA 15510